

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tervarus L. Gary,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 10, 2018

Court of Appeals Case No.
18A-CR-1101

Appeal from the Elkhart Superior
Court

The Honorable David C.
Bonfiglio, Judge

Trial Court Cause No.
20D06-1712-FD-7

**Crone, Judge.**

# Case Summary

[1] Tervarus L. Gary appeals the two-year sentence imposed by the trial court following his guilty plea to class D felony nonsupport of a dependent child. He asserts that his sentence is inappropriate in light of the nature of the offense and his character. He further asserts that the trial court fundamentally erred in allowing him to appear for his sentencing hearing via video conference without first obtaining a written waiver of his right to be present. Concluding that Gary has not met his burden to show that his sentence is inappropriate or that the trial court committed fundamental error, we affirm.

# Facts and Procedural History

[2] Gary has a daughter, T.R., who was born on September 28, 2009. After paternity was established in 2010, a child support order was entered. In short, between May 1, 2014, and April 4, 2018, Gary paid nothing toward his child support obligation. Specifically, in April 2014, the trial court issued a writ of attachment against Gary after he failed to appear at a hearing and show proof of reimbursement to T.R.'s mother for mediation fees. At this time, he was ordered to pay weekly child support of $31 as well as $9 per week toward arrearages. In July 2015, Gary was found in contempt for failure to pay. In July 2016, Gary was again found in contempt for failure to pay and was ordered committed to the Elkhart County Correctional Facility ("ECCF"). However, the trial court suspended the commitment on the condition that Gary missed no payments between the contempt hearing and the next hearing set for August 30, 2016. Gary failed to appear for the hearing, and a body attachment

was entered. In October 2016, the trial court ordered Gary into civil commitment to ECCF with a recommendation that he participate in Elkhart County Community Corrections ("ECCC"). Gary's child support arrearage at that time totaled $6808. Gary began work release through ECCC in November 2016. By December 2016, ECCC requested a warrant against Gary due to unacceptable conduct. As of December 2017, Gary's child support arrearage exceeded $8000. Gary was eventually terminated from work release in February 2018 after causing numerous disciplinary issues, and he was transferred to the Elkhart County Jail.

The State charged Gary with class D felony nonsupport of a dependent child alleging that between May 1 and August 31, 2014, he failed to pay any support for T.R. The trial court held a change of plea hearing on March 7, 2018, and Gary appeared via video conference and pled guilty to his crime. On April 4, 2018, the trial court held a sentencing hearing. Gary again appeared via video conference. The court imposed a two-year sentence minus earned credit time. This appeal ensued.

## Discussion and Decision

### Section 1 – Gary has not met his burden to demonstrate that his sentence is inappropriate.

Gary claims that his two-year sentence is inappropriate and invites this Court to reduce it pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial

court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[5] Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a class D felony is between six months and three years, with an advisory sentence of one and one-half years. Ind. Code § 35-50-2-7(a). Here, the two-year sentence imposed by the trial court is slightly above the advisory but well below the maximum allowable by statute.

[6] As for the nature of the offense, although Gary pled guilty to failing to support T.R. between May 1 and August 31, 2014, his nonsupport of his daughter is not simply an isolated occurrence confined to the current charge. His failure to pay has spanned over four years and has resulted in a child support arrearage in excess of $8000. Gary has not persuaded us that sentence revision is warranted based on the nature of his offense.

[7] Regarding his character, we note that the character of the offender is found in what we learn of the offender's life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Included in that assessment is a review of an offender's criminal history. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Our review of the transcript of the sentencing hearing reveals that the trial court tailored an appropriate sentence based on Gary's criminal history and his behavior during work release, and we think rightfully so. At the relatively young age of thirty-one, Gary has an extensive criminal history including eleven misdemeanor and two felony convictions. Indeed, as recently as 2017, Gary was convicted of level 6 felony possession of methamphetamine. The trial court has given him the past benefit of participating in work release through community corrections so that he could support his child, but rather than support T.R., he chose to start "raising hell" and was terminated from the program. Appellant's App. Vol. 2 at 47. Not only does this behavior reflect negatively on Gary's character, but it also resulted in him no longer being a candidate for work release. Under the circumstances presented, Gary has not met his burden to demonstrate that the two-year

sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character.

## Section 2 – Gary has not met his burden to demonstrate fundamental error.

[8] Gary next contends that the trial court erred in allowing him to appear for his sentencing hearing via video conference without first obtaining a written waiver of his right to be present in person. Gary concedes that he did not object to this procedure below. Thus, he argues that the error was fundamental.

[9] "Neither the United States Constitution nor the Indiana Constitution explicitly or implicitly secure[s] to a defendant the right to be present at sentencing." *Cleff v. State*, 565 N.E.2d 1089, 1091 (Ind. Ct. App. 1991), *trans. denied*. Rather, this nonconstitutional right is derived from Indiana Code Section 35-38-1-4(a), which provides that criminal defendants "must be personally present at the time sentence is pronounced." Our supreme court has determined that personal presence in this context means a "defendant's actual physical presence" at sentencing. *Hawkins v. State*, 982 N.E.2d 997, 1002 (Ind. 2013).

[10] However, Indiana Administrative Rule 14(A)(2)(c) provides that a trial court "may use audio visual telecommunication to conduct ... [s]entencing hearings ... when the defendant has given a written waiver of his or her right to be present in person and the prosecution has consented." Accordingly, "a trial court may conduct a sentencing hearing at which the defendant appears by

video, but only after obtaining a written waiver of his right to be present and the consent of the prosecution." *Hawkins*, 982 N.E.2d at 1002-03.[1]

[11] In *Hawkins*, the defendant appeared at the sentencing hearing by video conference without expressly waiving his right to be present in person. Like Gary, the defendant in *Hawkins* failed to object. Because the supreme court was remanding for a new trial on other grounds, the court specifically stated, "we need not decide the impact of Hawkins's failure to contemporaneously object or weigh the impact of denying a defendant the right to be physically present for sentencing under fundamental error analysis." *Id*. at 1003. Still, the court cautioned:

> Going forward, though, we would expect to see what our rules require reflected in the record, and would urge trial courts to be cautious of using procedures—however efficient they may be—without following all of the steps required to implement those procedures in a way that is fair to all involved.

---

[1] The *Hawkins* court noted that Indiana Code Section 35-38-1-4(a) is written "in such a way that it conveys not only the defendant's *right* to be present at sentencing, but also his *obligation* to be present." *Hawkins*, 982 N.E.2d at 1003 n.4.

> This is why the Administrative Rule turns not just on the defendant's written waiver, but also on the prosecution's consent. Just as the defendant benefits at sentencing from being able to directly view witness demeanor and present personal emotion in his own testimony, so too might the State benefit—in pursuing a higher sentence—from presenting the defendant in person as opposed to a more sterile video conference.

*Id*.

*Id.* As this warning was not heeded in the instant case, we must determine whether the trial court's failure to obtain a written waiver from Gary or have him physically present at sentencing constituted fundamental error.

[12] Fundamental error is an extremely narrow exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018). To establish fundamental error, the defendant faces the heavy burden of showing that the alleged error was so prejudicial to his rights as to make a fair trial impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). The defendant must show that, under the circumstances, the error "constitute[d] clearly blatant violations of basic and elementary principles of due process" and "present[ed] an undeniable and substantial potential for harm." *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

[13] Gary has not met the heavy burden of establishing fundamental error. His entire fundamental error argument is as follows:

> In the present case, Gary's due process rights under both the Fourteenth Amendment of the U.S. Constitution and Article I, Section 12 of the Indiana Constitution, as well as precepts of fundamental fairness grounded in both constitutions were violated when he was sentenced by video hearing when he had not waived his right to be physically present and the state had not consented to any waiver of right to be present.

Appellant's Br. at 13. As we stated above, the right to be physically present during sentencing is not a constitutional right, and from a basic due process

standpoint, the right to be physically present during sentencing has long been held not to be on par with the right to be physically present during the guilt-determination phase. *E.g., Cleff*, 565 N.E.2d at 1091. While the trial court failed to obtain a written waiver for the sentencing hearing, we conclude that such error did not run afoul of underlying basic due process itself.

[14] In essence, Gary's argument is that he would have had a winnable objection to the sentencing had his trial counsel in fact objected. But fundamental error requires more than just showing a winnable objection. The record establishes that Gary was represented by counsel and had more than an adequate opportunity to be both seen and heard at the sentencing hearing and to present his argument, albeit via video conference. Unlike the dissent, we will not make the leap from our supreme court's careful cautioning in *Hawkins* to the conclusion that all irregularities are *per se* fundamental errors. Although we disapprove of the trial court's failure to follow proper procedure, we cannot say that Gary's sentencing via video conference absent a proper written waiver constituted a clearly blatant violation of basic and elementary principles of due process. Accordingly, Gary has not carried his burden to show fundamental error on appeal.

[15] Affirmed.

Najam, J., concurs.
Pyle, J., dissents with opinion.

| Tervarus L. Gary,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | Court of Appeals Case No.<br>18A-CR-1101 |

**Pyle, Judge dissenting with opinion.**

I respectfully dissent from my colleagues' opinion. As an initial matter, I believe that the issue of Gary's lack of physical presence at the sentencing hearing should first be addressed. There is a lengthy history involving the common law and statutory right requiring a defendant's actual physical presence at a sentencing hearing. The history is so compelling that I believe a trial court may commit fundamental error when a sentencing hearing is conducted without the defendant being physically present.

[17] My colleagues ably point out that fundamental error is a substantial, blatant violation of due process that also exposes the defendant to undeniable harm. *Hall v. State*, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010). However, in my mind, the question is, can the violation of a long established common law and statutory right provide the basis for fundamental error?

[18] Indiana was admitted into the Union as the nineteenth state on December 11, 1816. THE NEW YORK PUBLIC LIBRARY DESK REFERENCE 693 (1989). As early as 1852, a statute was passed requiring defendants to be physically present at sentencing hearings. 2 R.S. 1852, Art. XII sec. 123 p. 378 (J.P. Chapman ed., 1852 ed.). In addition, the United States Supreme Court has taken note of the long established common law tradition requiring a defendant to be "personally present before the court at the time of pronouncing sentence, . . . ." *Ball v. U.S.*, 140 U.S. 118, 131, 11 S.Ct. 761, 766, 35 L.Ed 377 (1891). Quoting Justice Scholfield of the Illinois Supreme Court, the Supreme Court listed the important purposes behind the requirement for personal presence at a sentencing hearing as follows:

> . . . that the defendant might be identified by the court as the real party adjudged guilty; that he might have a chance to plead a pardon, or move in arrest of judgment; that he might have an opportunity to say why judgment should not be given against him; and that the example of being brought up for the animadversion of the court and the opening enunciation of punishment might tend to deter others from the commission of similar offenses.

*Ball*, 140 U.S. at 131 (citing *Fielden v. People*, 128 Ill 595, 21 N.E. 584 (Ill. 1889)). Notably, that same year, the Illinois Supreme Court found that failure

to have a defendant present "was no ground for reversal in any case." *Id.* (citing *Gannon v. People*, 127 Ill 507, 21 N.E. 525 (Ill. 1889)). However, the Supreme Court concluded that "the great weight of authority is the other way." *Id.*

[19] Our supreme court has noted that the right of a defendant to be physically present at sentencing is well settled. *Hawkins v. State*, 982 N.E.2d 997 (Ind. 2013); *Royal v. State*. 272 Ind. 151, 154, 396 N.E.2d 390, 393 (1979). As we have discussed above, this right may be as old as the great State of Indiana. For this reason, I would respectfully submit that a trial court's failure to follow such a well-established law is a blatant violation of basic and elementary principles of due process. In addition, failure to follow this settled law carries a significant risk of prejudice to the defendant; an audio-visual link does not convey the same emotion, meaning, and judicial import as personally appearing in court. *Cf. Love v. State*, 61 N.E.3d 290 (Ind. Ct. App. 2016) (J. Pyle, dissenting) vacated by *Love v. State*, 73 N.E.3d 693 (Ind. 2017). I am aware that for many trial courts, use of an audio-visual link may be more efficient and preferable to spending county funds to transport a defendant to court for sentencing. However, the law must be honored. See *Hawkins v. State*, 982 N.E.3d 997 (Ind. 2013). As a result, I would reverse and remand for a new sentencing hearing at which Gary is personally and physically present.